FIRST NATIONAL CITY BANK v. JOHN McMANUS

No. 7518SC815

(Filed 7 April 1976)

1. **Money Received § 1— money paid under mistake of fact**
Money paid to another under a mistake of fact may be recovered provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund.

2. **Money Received § 2; Pensions— overpayment of pension benefits — mistake of fact — recovery of overpayment**
Where defendant had vested benefits of $16,880.45 in his former employer's pension plan, the employer directed the pension plan trustee to pay this amount to defendant in ten annual installments, but the trustee, as the result of clerical error, paid defendant $1,688.05 per month for 13 consecutive months for a total of $21,944.65 instead of his entitlement of $3,376.10, and defendant had no actual knowledge of the amount of the vested benefits due him or the manner in which the payments were to be made, it was *held:* (1) the overpayment was made under a mistake of fact; (2) defendant has been unjustly enriched by the overpayment; (3) plaintiff trustee's negligence and defendant's ostensible good faith, standing alone, constitute an

insufficient defense to the trustee's claim for repayment; (4) defendant did not irrevocably change his position so that it would be unjust to require him to repay the amount he received over his entitlement of $3,376.10 by the fact he has incurred increased tax liability, has had to retain attorneys and accountants, and has invested the funds in a business wherein the funds have not been maintained in a separate liquid account or form; and (5) the trustee is entitled to recover from defendant the $18,568.55 overpayment.

APPEAL by plaintiff from *Collier, Judge*. Judgment entered 2 June 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 February 1976.

In its complaint and amended complaint, plaintiff, the trustee for the "Employees' Pension Plan of Lanvin-Charles of the Ritz, Inc. and Related Companies," alleged that defendant, "a qualified participant under the pension plan," should have received through February 1974 only $3,376.10 in annual installments of $1688.05, " . . . but by mistake of fact on the part of the plaintiff . . . " defendant actually received " . . . the total sum of $21,944.65. Thus, by [reason of the] mistake of fact the plaintiff has made an overpayment of $18,568.55 to the defendant, and the defendant has been unjustly enriched by receiving said amount to which he has no right or claim of entitlement."

Plaintiff further alleged that, as soon as the error was discovered, it immediately notified defendant of the error and " . . . requested that the sum be returned to the plaintiff. However, the defendant has failed and refused to repay all or any part of the overpayment to the plaintiff. . . . " , who reimbursed the pension fund " . . . in the amount of $18,568.55, the amount of the overpayment. . . . " Plaintiff sought recovery from defendant of the same amount reimbursed by it to the fund account.

Defendant's answer, denying the material allegations raised by plaintiff, asserted, inter alia, that he received the monies in "good faith" and further counterclaimed that

" . . . as the result of the negligence of the plaintiff and the breach of standards of fiduciary duty owed by the plaintiff to the defendant in administration of the Plan, the defendant has incurred income tax liability in excess of that which he otherwise would have incurred and has paid taxes due thereby, has been compelled to employ legal

counsel and other advisors and consultants as a result of the negligence and breach of fiduciary standards by the plaintiff and the plaintiff has been damaged in the amount of at least $18,568.55."

Plaintiff's reply denied defendant's counterclaims, maintained that it failed to state a claim upon which relief can be granted and argued that if plaintiff had been negligent, the defendant is barred from recovery by reason of his own negligence.

Plaintiff and defendant each subsequently moved for summary judgment. According to plaintiff's affidavits and supporting documentation, defendant was entitled to $16,880.45 payable in ten annual installments and knew this, but that, as the result of a clerical error, defendant received $1688.05 per month for 13 consecutive months for a total of $21,944.65 instead of his actual lawful entitlement of $3,376.10.

Defendant's affidavit indicated that he had sought from a Ralph Nierenberg, of the pension plan committee, a lump sum payout and that Nierenberg assured defendant that they would try to " 'work it out the best way they can.' " Defendant contended that the 13 payments actually received seemed to be in response to his request and that as a result of the payout process he has incurred significantly increased tax liability, has had to retain, at a significant cost, attorneys and accountants and that he has "invested the proceeds in a business operation, along with other funds . . . and did not maintain . . . a separate liquid account or form."

Based on the foregoing information, the trial court entered judgment containing the following uncontroverted facts:

"1. That the parties hereto are properly before the Court and that the court has jurisdiction of the subject matter of this case.

2. That until December 31, 1972, the defendant was an employee of Lanvin-Charles of the Ritz, Inc., and was a qualified participant under its pension plan, the Employees Pension Plan of Lanvin-Charles of the Ritz, Inc., and Related Companies; that the plaintiff was a trustee of the Employees Pension Plan.

3. That the defendant, upon leaving the employ of his employer, requested of one Ralph Nierenberg, an officer of

his employer and one of the three members of the pension committee, whose function it was to determine the handling of benefits under the pension plan, that he be paid his vested benefits under the plan in a lump sum as soon as possible; that Ralph Nierenberg neither acceded to nor denied the request, but responded that the matter would be handled by the employer so that they would 'work it out the best way we can.'

4. That on or about January 22, 1973, the defendant made formal application for vested termination benefits under the plan on a form furnished by the employer or the plaintiff trustee; that said form did not provide for the applicant to request the manner of payout and no such request was made by defendant on the form.

5. That on or about February, 1973, Lanvin-Charles of the Ritz, Inc., pursuant to the pension plan, instructed the plaintiff trustee to make payment to the defendant of his vested termination benefits by paying the defendant the sum of $16,880.45, such payments to be made in the amount of $1,688.05 for nine (9) annual installments and a final annual payment of $1,688.00.

6. That a copy of the application form submitted by the defendant, including thereon instructions to the trustee concerning the manner of payout, among other matters, was mailed to the defendant on or about February 8, 1973, and defendant received the completed form shortly thereafter.

7. That the plaintiff trustee had all the facts applicable to the manner of payment and the vested termination benefits of the defendant available to it and, as the result of a clerical error on the part of the plaintiff trustee, plaintiff trustee made payments on a monthly basis of a sum of $1,688.05 per month for a period of 13 months, at which time the total payments to the defendant amounted to $21,944.65.

8. That, upon receiving the payments, the defendant had no actual knowledge of the manner in which the payments were to be made and assumed that the payments were being made in the ordinary and routine course of the distribution of his vested benefits.

9. That after the plaintiff had made 13 monthly payments for a total of $21,944.65, its error in making the

payments was discovered. The defendant, at that time if payments had been made in the manner instructed by the employer to the plaintiff trustee, would have received a total of $3,376.10. The defendant was notified of the error by letter from plaintiff dated February 25, 1974, and a demand for a refund of $18,568.55, the amount of the overpayment based upon the schedule of annual payments of $1,688.05 as directed by the employer to the trustee, was made.

10. That, upon learning of the error of the plaintiff in paying out the sum of $21,944.65, the employer Lanvin-Charles of the Ritz, Inc. made demand upon the plaintiff trustee for reimbursement to the trust fund of the Employees Pension Plan of Lanvin-Charles of the Ritz, Inc. and Related Companies in the amount of $18,568.55, as reimbursement for the payments made to defendant; that plaintiff trustee, First National City Bank, did so reimburse the trust fund of the Pension Plan for the error in payout on or about February 22, 1974.

11. That the accelerated payout of the vested benefits under the plan to the defendant resulted from the error of the plaintiff First National City Bank.

12. That the vested benefits of the defendant in the plan, based upon computations furnished to the trustee by actuaries, amounted to $16,880.45. There is no evidence that the defendant had actual knowledge of the total of the vested benefits due him under the plan.

13. That the defendant paid Federal and State income taxes on the full amounts of the distributions to him in each of the tax years 1973 and 1974, which distributions resulted in substantially increased tax liabilities over the tax liabilities which would have been incurred had the payment been made by plaintiff trustee according to the instructions from the employer.

14. That the defendant has employed advisors and attorneys and has incurred costs and fees for advice regarding the demand of the plaintiff for overpayment."

The trial court then held that defendant "has changed his position and incurred substantial liabilities . . . " , and that " . . . defendant has not been unjustly enriched by the accelerated payment to him of $16,880.45, the amount of his vested benefits

under the plan, but has been unjustly enriched by the payment of the excess amount above his vested benefits of $5,064.20." The court then determined that defendant "is entitled to retain the sum of $16,880.45 . . . [but] [t]hat the plaintiff, First National City Bank, is entitled to recover from the defendant . .·. the sum of $5,064.20. . . . " Plaintiff appealed.

*Smith, Moore, Smith, Schell & Hunter, by Martin N. Erwin and Benjamin F. Davis, Jr., for plaintiff appellant.*

*Block, Meyland & Lloyd, by Thomas J. Robinson, Jr., for defendant appellee.*

MORRIS, Judge.

Plaintiff appellant, contending that the money was paid out to the defendant payee under a mistake of fact, maintains that defendant, unjustly enriched and unable to construct an adequate defense in law or equity, must accede to plaintiff's demand for repayment. We agree.

[1] The issue of who stands for the loss and disappointment when money has been disbursed under some mistaken belief of entitlement is always problematic. Our Supreme Court, structuring the problem along lines of equity, justice and transactional security, broadly holds that " . . . money paid to another under the influence of a mistake of fact . . . may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund." *Guaranty Co. v. Reagan*, 256 N.C. 1, 9, 122 S.E. 2d 774 (1961); *Dean v. Mattox*, 250 N.C. 246, 108 S.E. 2d 541 (1959); *Allgood v. Trust Co.*, 242 N.C. 506, 88 S.E. 2d 825 (1955); *Johnson v. Hooks*, 21 N.C. App. 585, 205 S.E. 2d 796 (1974); cert. denied 285 N.C. 660. Also see 66 Am. Jur. 2d, Restitution and Implied Contracts, § 135, pp. 1066-1067.

[2] There is no question but that the clerical error arising under this fact situation is sufficient to denominate the payment by plaintiff to defendant as one made under a mistake of fact. *Simms v. Vick*, 151 N.C. 78, 65 S.E. 621 (1909); *Harrington v. Lowrie*, 215 N.C. 706, 2 S.E. 2d 872 (1939); also see: *Continental Oil Co. v. Jones*, 191 So. 2d 895 (La. Ct. App. 1966). Moreover, plaintiff's negligence, if any, and defendant's ostensible good faith, standing alone, constitute an insufficient defense to plaintiff's claim for repayment. *Dean v. Mattox, supra; Allgood v. Trust Co., supra;* also see: *Salvati v. Streator Town-*

*ship High School Dist.* No. 40, 51 Ill. App. 2d 1, 200 N.E. 2d 122 (1964) ; *Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 520 P. 2d 1262 (1974). Also see: 70 C.J.S., Payment, § 157(d), p. 371; 66 Am. Jur: 2d, Restitution and Implied Contracts, § 131, pp. 1063-1064.

Thus, when stripped of its considerable detail, this case essentially turns on whether the overpayment of $18,568.55 to defendant " . . . caused such a change in the position of the other party [i.e. payee] that it would be unjust to require him to refund [the money]." 66 Am. Jur. 2d, Restitution and Implied Contracts, § 135, p. 1066. Stated differently, " . . . the crucial question in an action of this kind is, to which party does the money, in equity and good conscience, belong? *Allgood, supra,* at 512.

The change of position concept, usually framed in terms of equity and fair play, ultimately focuses attention on the payee's behavior and reaction to the payment and will warrant retention of the money given to the payee under a mistake of fact only when the payee's change of position resulting from the payment is obviously " . . . detrimental to the payee, material and irrevocable and [generates a condition] such that the payee cannot be placed in status quo." *Westamerica Securities, Inc., supra,* at 309. Though the issue is never simple or easily explained, we are of the opinion that "[a] change of position is not detrimental, and is not a defense, if the change can be reversed, or the status quo can be restored, without expense." 40 A.L.R. 2d, What Constitutes Change of Position by Payee so as to Preclude Recovery of Payment Made Under Mistake, § 2, p. 1001. The burden of such an irrevocable and material change of position that the payee cannot be placed in status quo is on the payee. 66 Am. Jur. 2d, Restitution and Implied Contracts, § 135.

Here, defendant payee asserts that the change of position resulted from the increased tax liability generated by the payment, the necessity and cost of defending his stake in this matter and the fact that the fund proceeds have been invested "in a business operation" wherein the funds in question have not been maintained "in a separate liquid account or form." We cannot, as a matter of law, perceive increased tax liability or defense costs as a "change of position" sufficient to bar plaintiff's recovery. Defendant can apply for tax refunds if a refund is in order, and the cost of resolving a dispute is simply part of the price all parties must bear when challenged with the pros-

---

pect of a lawsuit. Moreover, the fact that defendant invested in a business cannot, by itself and without other facts, raise a change of position defense. Defendant, in his affidavit, chose only to say that he had invested the money with other funds in a business venture. For reasons best known to him, he did not give any other information, except that he did not maintain a "separate liquid account or form." He has disclosed no reason that the money cannot be refunded. Where a payee uses " . . . the erroneous payment to acquire property of value . . . [there can be no] detrimental change of position." 40 A.L.R. 2d, supra, § 5, p. 1015; also see *Guaranty Co. v. Reagan, supra; Ohio Co. v. Rosemeier,* 32 Ohio App. 2d 116, 288 N.E. 2d 326 (1972); *Westamerica Securities, Inc., supra.* Defendant simply received a *benefit* to which he had no entitlement. When defendant invested the funds in a business venture, he merely transferred his interest from a cash position to some type of equity position.

Plaintiff, having agreed to pay defendant the amount due him under the pension plan in annual installments, is entitled to the use of the funds erroneously paid defendant for the period pending payment under the provisions of the plan.

We reach the conclusion that the court should have allowed plaintiff's motion for summary judgment and denied defendant's motion.

Reversed.

Judges VAUGHN and CLARK concur.