937 F.2d 602
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AMSOUTH INVESTMENT SERVICES, INCORPORATED, Plaintiff-Appellee,
v.
Ronald E. PHILLIPS, Defendant-Appellant.
 No. 90-1741.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1991.
Decided July 3, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. William M. Catoe, Jr., Magistrate Judge. (CA-89-856-6-3K)
 Curtis W. Stodghill, Dobson & Dobson, Greenville, S.C., for appellant.
 Bradford W. Wyche, Wyche, Burgress, Freeman & Parham, P.C., Greenville, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before K.K. HALL and MURNAGHAN, Circuit Judges, and JACKSON L. KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This action arises from the mistaken payment of money by the plaintiff-appellee, AmSouth Investment Services, to the defendant-appellant, Ronald E. Phillips. In the lower court, the U.S. Magistrate Judge granted summary judgment in favor of AmSouth and ordered that Phillips repay AmSouth $76,582.77, plus interest. Motions for reconsideration by both parties were denied by the magistrate judge. Phillips now appeals the grant of summary judgment. Because we find no error in the magistrate judge's order, we affirm his decision.
 
 Background
 
 2
 In February 1984, Phillips bought 10,000 shares of Prosaca stock for $1,200 from United Financial Investments (UFI), the plaintiff-appellee's predecessor in interest. Beginning in September, 1986, the monthly statements sent to Phillips mistakenly indicated that he owned 10,000 shares of Property Trust of America (PTA). At the time, PTA was selling for roughly 100 times what Prosaca was selling for, however, the price was not reflected on the statements sent to the appellant. After AmSouth acquired UFI in 1987, the monthly statements sent to Phillips indicated the value of the PTA stock mistakenly credited to Phillips' account--over $10 per share. In September 1987, Phillips received a $2,000 dividend check from the PTA stock. Upon receipt of the check, Phillips inquired with AmSouth and was informed that he did in fact own the stock, at which point Phillips began requesting AmSouth to liquidate his PTA interest. AmSouth completely liquidated Phillips' putative interest in PTA in November, 1987, and a total of $86,724.27 was credited to Phillips' account. Phillips invested approximately half of the proceeds from the liquidation in stocks which subsequently lost much of their value; he used the remainder of the money to pay income taxes and business debts. Later in November, AmSouth discovered the error and demanded reimbursement from Phillips; Phillips refused, so AmSouth filed this action.
 
 
 3
 After considering AmSouth's motion for summary judgment, the magistrate judge notified the parties by letter that he was inclined to grant the motion, but was concerned about Phillips' ability to get a refund of the capital gains taxes he had incurred in liquidating his putative PTA interest. The Court requested Phillips to indicate the amount of taxes he had paid so that amount could be deducted from the judgment. After a month passed without either party responding to the magistrate judge's letter, he granted summary judgment in favor of AmSouth.
 
 Discussion
 
 4
 Rule 56 provides that summary judgment should be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). Our review of the lower court's grant of summary judgment is de novo, therefore, we must reverse the lower court if the record reveals an unresolved issue of material fact or if the law was applied to the facts incorrectly. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988). On appeal, the record must be viewed in a light most favorable to the party opposing the motion. Id.
 
 
 5
 With that in mind, we turn to the law of unjust enrichment and restitution. There is no dispute that the substantive law of South Carolina applies to this action. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938). South Carolina follows the common law rule of restitution as set forth in the Restatement. Pilot Life Ins. v. Cudd, 208 S.C. 6, 14, 36 S.E.2d 860, 863 (1945). The general rule is that:
 
 
 6
 A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess.
 
 
 7
 Restatement of Restitution Sec. 20 (1937). However, the right to restitution is terminated where, after the payment is made, the payee's circumstances have changed such that to require restitution would be inequitable. Id. at Sec. 142.
 
 
 8
 The record tends to indicate that AmSouth was negligent in incorrectly crediting Phillips' account. However, the question of AmSouth's negligence need not be decided in order to dispose of this matter. Negligence alone does not preclude a party from recovering money mistakenly paid to another. Atlantic Coast Line RR Co. v. Jacob S. Schirmer & Sons, 87 S.C. 309, 69 S.E. 439 (1910). The dispositive issue is whether, after the overpayment, Phillips so changed his position that it would be inequitable to require him to refund the money.
 
 
 9
 Generally, only a change of circumstances which is detrimental to the payee, material, and irrevocable will be sufficient to preclude restitution. See, e.g., Jonklaas v. Silverman, 117 R.I. 691, 698, 370 A.2d 1277, 1281 (1977); First Nat'l City Bank v. McManus, 29 N.C.App. 65, 71, 223 S.E.2d 554, 558 (N.C.App.1976); Westamerica Securities, Inc. v. Cornelius, 214 Kan. 301, 520 P.2d 1262 (1974); Annotation, What Constitutes Change of Position by Payee so as to Preclude Recovery of Payment Made Under Mistake, 40 A.L.R.2d 997, 1001 (1955). In the present case, Phillips used the proceeds from the sale of PTA stock to purchase additional securities, to pay business expenses, and to pay taxes. It is settled law that use of money received by mistake to pay expenses, whether personal or business expenses, shall not suffice to create a material change of position. See, e.g., Messersmith v. G.T. Murray & Co., 667 P.2d 655 (Wyo.1983); Westamerica Securities, Inc. v. Cornelius, supra; Ohio Co. v. Rosemeier, 32 Ohio App.2d 116, 288 N.E.2d 326 (1972); Picotte v. Mills, 200 Mo.App. 127, 203 SW 825 (1918); Donner v. Sackett, 251 Pa. 524, 97 A. 89 (1961); Restatement of Restitution Sec. 142 comment b, illustration 6 (1937). Similarly, it has been held that the payment of taxes does not create a material change of position, First Nat'l City Bank v. McManus, 29 N.C.App. 65, 223 S.E.2d 554 (1976), nor does the purchase of securities which subsequently lose a portion of their value constitute a material change, see Smith v. Rubel, 140 Or. 422, 13 P.2d 1078 (1932). We are confident that South Carolina would follow the common law principles outlined above, see Town of Bennetsville v. Bledsoe, 226 S.Ct. 214, 84 S.E.2d 554 (1954). Therefore, we find that Phillips has not materially, irrevocably changed his circumstances such that it would be inequitable to order him to repay the money. Accordingly, the judgment of the lower court is affirmed.
 
 
 10
 AFFIRMED.