IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-372

Filed 6 May 2026

Guilford County, No. 21CVS007182-400

SHAWN MALDON, Plaintiff,

v.

NORA TAYLOR SCOTT, Defendant.

Appeal by Plaintiff from judgment entered 9 August 2023 by Judge William A. Wood in Guilford County Superior Court. Heard in the Court of Appeals 30 January 2025.

*Mark L. Hayes for Plaintiff-Appellant.*

*Beacon Legal PLLC, by Gavin J. Reardon, and Rossabi Law Partners, by Amiel J. Rossabi, for Defendant-Appellee.*

HAMPSON, Judge.[1]

## **Factual and Procedural Background**

Shawn Maldon (Plaintiff) appeals from a Judgment entered in favor of Nora Taylor Scott (Defendant) following a jury verdict. The jury concluded both parties were in breach of a contract related to the transfer and sale of a condominium unit. Following the jury verdict finding both parties in breach, the trial court concluded

---

[1] Judge Stading provided substantial authorship of the portions of the Opinion of Court on which the panel is unanimous.

neither party was obligated further under the contract and awarded Defendant—as the sole title holder of the condominium—the proceeds of a sale of the unit. The Record on Appeal, including the evidence presented at trial, tends to show the following:

Plaintiff and Defendant began dating in January 2017. Plaintiff worked in real estate and Defendant was a college student. Plaintiff approached Defendant about purchasing a home and told her, "instead of continuing to pay rent, [she] should put [her] money towards a mortgage . . . ." On 1 September 2017, Defendant closed on the property at issue in this case (the Condominium). To finance the Condominium, Defendant obtained a mortgage and Plaintiff provided the down payment as a gift.

After purchasing the Condominium, Defendant lived there full-time, and Plaintiff would visit her there. In the summer of 2019, the parties filed complaints requesting ex parte domestic violence protective orders against each other.

The parties entered into a settlement agreement (the "Agreement") on 16 August 2019. The Agreement provided Plaintiff would take possession of the Condominium and make all payments associated with it, including the mortgage and utility bills. Defendant would transfer ownership of the Condominium to Plaintiff by quitclaim deed if Plaintiff had relieved Defendant of her obligation under the mortgage by 15 November 2019. If Plaintiff failed to relieve Defendant of the mortgage obligation by that time, the Condominium would be sold in accordance with certain agreed-upon procedures. These procedures include a provision requiring the

net proceeds of the sale to be distributed to Plaintiff. Additionally, if Plaintiff "fail[ed] to pay and service all expenses and debts associated with the Condominium," then he was required to "immediately vacate and relinquish possession of the Condominium, and the Condominium shall be sold" under the same sale procedures as if he had failed to relieve Defendant of her mortgage obligation.

Plaintiff did not relieve Defendant of her mortgage obligation by 15 November 2019. Plaintiff also failed to pay the expenses associated with the Condominium, and Defendant in November began paying expenses including making mortgage payments and paying homeowner's association dues. Plaintiff did not vacate the Condominium as required by the Agreement, and Defendant filed a summary ejectment action in December 2020. She was granted possession of the Condominium in January 2021, and Plaintiff appealed to District Court, which in April 2021 issued a Writ of Possession after Plaintiff failed to pay a rent bond.

On 1 July 2021, the District Court, however, found no landlord-tenant relationship existed between the parties and concluded subject matter jurisdiction was proper in Superior Court to consider disposition of the property. The District Court dismissed Defendant's summary ejectment action for lack of subject matter jurisdiction and vacated the magistrate's order.

In August 2021 Plaintiff filed the Complaint in this action in Superior Court which, as amended, sought a Declaratory Judgment that he "is entitled to sell [ ] the [Condominium] and ret[ain] . . . the proceeds generated from the sale." Defendant

filed an Answer and Motion to Dismiss and asserted counterclaims for Breach of Contract, Quiet Title, and Unjust Enrichment.

In May 2022, Plaintiff accessed the building and changed the locks on the Condominium. Defendant retained a locksmith to regain access to the Condominium, and Plaintiff changed the locks again within two days.

Both parties filed Motions for Preliminary Injunctions. The trial court ordered Plaintiff "(a) immediately vacate the unit; (b) cease trespassing on the unit and changing the locks to the unit; (c) stop interfering in any way with a sale of the unit; and (d) not be within five hundred (500) feet of the unit[.]"

Defendant sold the Condominium in September 2022.

In October 2022, Defendant filed an amended Answer which asserted an additional counterclaim for Malicious Prosecution. The amended Answer alleged Plaintiff had procured a warrant containing a charge against Defendant which led to her arrest, and that Plaintiff knew the allegations in the warrant were false. Plaintiff failed to timely file a responsive pleading to the new counterclaim, and the trial court made an entry of default against him on 9 December 2022. Plaintiff filed an amended Reply to Defendant's counterclaims on 12 December 2022.

The jury trial began on 10 July 2023. Because the Condominium had been sold, Plaintiff asserted Defendant had breached the Agreement and he was entitled to the proceeds of the sale. Plaintiff filed a Preliminary Motion to set aside the trial court's

entry of default against him with respect to Defendant's malicious prosecution claim, which the trial court denied.

Following the presentation of evidence, Defendant moved for directed verdict. The trial court denied Defendant's Motion as to Plaintiff's claim for Breach of Contract but granted it as to her claim for Malicious Prosecution, for which she had produced evidence of damages. Plaintiff likewise moved for directed verdict on his claim for Breach of Contract, which the trial court denied.

Four issues were submitted to the jury:

1. Did Defendant breach the contract by non-performance?

2. If Defendant did breach the contract by non-performance, did Plaintiff also breach the contract by non-performance?

3. Did Plaintiff reside in the Unit and benefit from payments made by Defendant without reimbursing Defendant?

4. What amount is Defendant entitled to recover for unjust enrichment?

Following deliberations, the jury returned a verdict finding: (1) Defendant materially breached the Agreement by non-performance; (2) Plaintiff materially breached the Agreement by non-performance; (3) Plaintiff did not reside in the Condominium and did not benefit from payments made by Defendant without reimbursing Defendant; and (4) Defendant was not entitled to punitive damages.

Plaintiff then moved for JNOV to set aside the jury verdict, which the trial court denied.

On 3 August 2023, the trial court entered its Order and Judgment on the jury's verdict. In so doing, the trial court "determine[d] that the contract at issue . . . was breached by both parties and, therefore, neither party has any obligation to the other based on that contract." It therefore ordered the proceeds from the sale of the Condominium, which had been deposited with the Clerk of Court, be disbursed to Defendant as the legal owner of the property. It additionally entered judgment against Plaintiff in the amount of $2,500 on Defendant's claim for Malicious Prosecution.

Plaintiff timely filed his Notice of Appeal on 31 August 2023.

## Issues

The issues on appeal are whether the trial court erred by: (I) denying Plaintiff's Motion for JNOV on his claim for Breach of Contract; (II) "treating" the Agreement as "rescinded"; and (III) granting Defendant's Motion for Directed Verdict on her claim for Malicious Prosecution.

## Analysis

### I. Breach of Contract

Plaintiff argues the trial court erred by denying his Motion for JNOV on his claim for Breach of Contract: that it should have concluded as a matter of law

Defendant breached the Agreement and ordered the proceeds from the sale of the Condominium be distributed to Plaintiff.

When a party's motion for directed verdict at the close of the evidence is denied, that party "may move to have the verdict and any judgment thereon set aside and to have judgment entered in accordance with his motion for a directed verdict[.]" N.C. Gen. Stat. § 1A-1, Rule 50(b)(1) (2025). This motion for JNOV thus permits the trial court to enter judgment "in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury." *Ace, Inc. v. Maynard,* 108 N.C. App. 241, 245, 423 S.E.2d 504, 507 (1992).

"The propriety of granting JNOV is determined by the same considerations as that of the movant's prior motion for directed verdict—whether the evidence, taken in the light most favorable to the non-movant, is insufficient, as a matter of law, to support a verdict for the non-moving party." *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 211 N.C. App. 252, 256-57, 712 S.E.2d 670, 675 (2011) (citation omitted). "When a judge decides that a directed verdict or JNOV is appropriate, actually he is deciding that the question has become one exclusively of law and that the jury has no function to serve." *Hodgson Constr., Inc. v. Howard,* 187 N.C. App. 408, 411, 654 S.E.2d 7, 10 (2007) (citing N.C. Gen. Stat. § 1A-1, Rule 50, comment).

Plaintiff argues (1) the Agreement unambiguously required Defendant to disburse to him the "Net Sales Proceeds" from the sale of the Condominium and (2)

there is no dispute over the enforceability of the Agreement, and there was thus no issue of material fact and the trial court should therefore have granted his JNOV. Defendant argues the trial court did not err because she introduced evidence Plaintiff materially breached the terms of the Agreement by failing to vacate the Condominium as required, which relieved her of further contractual obligation. Plaintiff, in turn, argues Defendant's obligation to distribute the funds was independent of Plaintiff's obligations under the agreement and he is therefore entitled to those funds as a matter of law, regardless of whether he breached the terms of the Agreement.

"The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Coleman v. Shirlen,* 53 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981). However, "[f]ailure to perform an independent promise does not excuse nonperformance on the part of the other party." *Id.* at 578, 281 S.E.2d at 434. Whether an obligation is dependent or independent is determined by the intent of the contracting parties:

> Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely on the intention of the parties as shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties.

*Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (quoting *Wade v. Lutterloh*, 196 N.C. 116, 120, 144 S.E. 694, 696 (1928)). The essential question when a defendant asserts the plaintiff's antecedent breach of contract as a defense is whether that breach is material to the defendant's obligation. *See Coleman* at 578, 281 S.E.2d at 434 (holding because contract indicated obligations were independent "the language of the contract itself controverts defendants' assertion that plaintiff's breach was material."); *Crosby v. Bowers,* 87 N.C. App. 338, 345, 361 S.E.2d 97, 102 (1987) ("Whether plaintiff's actions in the present case constitute a breach of the agreement, and whether the alleged breach was material, is an issue of fact that should be determined by the jury on remand if defendants assert antecedent breach as a defense to plaintiff's claim.").

A material breach is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long,* 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003). "The question of whether a breach of contract is material is ordinarily a question for a jury." *Charlotte Motor Speedway, Inc. v. Tindall Corp.,* 195 N.C. App. 296, 302, 672 S.E.2d 691, 695 (2009). We review Plaintiff's Motion for JNOV to determine if there is "more than a scintilla of evidence" supporting Defendant's allegations Plaintiff first materially breached the contract such that Defendant was legally excused from further performance. *Lake Mary Ltd. Partnership v. Johnston,* 145 N.C. App. 525, 536-37, 551 S.E.2d 546, 554-55 (2001) (holding question of

whether party's actions constituted material breach when party argued performance was excused by antecedent breach was issue of fact to be determined by jury).

The Agreement, which the parties entered into in August 2019, created a timeline for a transfer of ownership of the Condominium, mandating that if Plaintiff relieved Defendant of her mortgage obligation by 15 November Defendant would transfer the title to him:

> In the event [Plaintiff] is able to remove and otherwise release [Defendant] of all liability associated with the Condominium, whether by refinance of all debts and notes secured by the Condominium or otherwise pays any and all outstanding debts and notes secured by the Condominium in full, on or before November 15, 2019, [Defendant] shall, by quitclaim deed, transfer all of her ownership interest in the Condominium to [Plaintiff.]

If Plaintiff failed to relieve Defendant of the mortgage by that time, the Condominium would be sold:

> In the event [Defendant] has not been released from all obligations associated with the Condominium, whether by refinance or payment in full of the outstanding debts associated with the Condominium, on or before 16 November 2019 the Condominium shall be placed on the market and sold in accordance with the procedures hereinafter provided.

In anticipation of the transfer of title, the Agreement provided Defendant would take possession of the Condominium and pay and service all expenses and debts associated with it:

> [Plaintiff] shall pay and be solely responsible for the mortgage payments, taxes, homeowners' insurance

10

premiums, ad valorem taxes, homeowners association dues, utilities, internet service, cable/satellite/television service, and all other expenses associated with the Condominium[.]

If Plaintiff failed to make all payments, he was required to vacate the Condominium and the Condominium would be sold:

In the event [Plaintiff] fails to timely pay and service all expenses and debts associated with the Condominium, including but not limited to those expenses outlined herein above, [Plaintiff] shall immediately vacate and relinquish possession of the Condominium and the Condominium shall be sold as set out below.

Incorporated into these two sales provisions are additional provisions governing how those sales would be conducted, including requiring the assistance of a real estate broker, mandating a minimum sale price, and directing the distribution of the sale proceeds. This "Net Sales Proceeds" provision distributes the profit from the sale to Plaintiff:

After the Condominium is sold and the expenses of the sale paid, which shall include the cost of any appraisal required herein, sales/brokerage commissions, prorated ad valorem taxes, revenue stamps, and other customary and routine closing costs, as well as the balance or balances owing on the note or notes secured by any outstanding deed of trust or trusts against the Condominium are paid, the net balance, constituting the "Net Sales Proceeds" shall . . . distributed in full to [Plaintiff].

In this case, there was evidence Plaintiff did not relieve Defendant of her mortgage liability within the window provided by the Agreement. Defendant also introduced evidence tending to show Plaintiff failed to pay the Condominium

11

expenses and failed to vacate the Condominium, in violation of the Agreement. Although Plaintiff continued to occupy the Condominium, in November 2019 Defendant began paying expenses including the HOA dues and mortgage payments. Plaintiff maintained possession of the Condominium until the District Court issued a Writ of Possession in April 2021. Plaintiff then unilaterally re-entered the Condominium, to which Defendant held title, by changing the locks twice in May 2022.

There was, thus, more than a scintilla of evidence from which the jury could determine Plaintiff materially breached the Agreement by failing to pay expenses and vacate the Condominium as required.[2] The trial court therefore did not err in denying Defendant's Motion for JNOV.

---

[2] The dissent would hold the jury's verdict did not find sufficient facts to support the conclusions of law contained in the trial court's Order and Judgment and remand this case for a new trial. However, Plaintiff did not at trial object to the jury instructions which led to that verdict, and he does not on appeal argue there was error in the jury instructions or the verdict sheet. Nor does he contend the trial court erred in its conclusions of law, except to argue the remedy ordered operated as an inappropriate rescission of the contract. Accordingly, we do not address this question. N.C. R. App. P. R. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned"). While the dissent argues inadequate factual findings prevent us from conducting meaningful appellate review of the trial courts conclusions, this is untrue as to the issues actually raised by Plaintiff. Plaintiff's argument that the trial court erred in denying his Motion for JNOV raises a question of law: he argues the Agreement requires the Net Sales Proceeds be distributed to him *regardless* of the jury's findings as to breach of the Agreement by the parties. In any event, when reviewed in context, the jury's verdict—informed by the jury instructions—reflects the jury found Plaintiff was not prevented from performing his obligations under the Agreement, Plaintiff materially breached the Agreement by failing to remove Defendant from the mortgage, pay expenses, and vacate the property, and *subsequently*, Defendant breached the contract by failing to transfer title. Likewise, we are not prevented from determining the remedy imposed by the trial court did not function as a rescission of the Agreement.

Plaintiff also argues the "Waiver and Modification" provision of the Agreement prevents Defendant from raising the defense of antecedent breach. Under this provision:

> No failure on the part of the Parties to exercise, no delay by the Parties in exercising, and no course of dealing with respect to any right or remedy of the Parties hereto will operate as a waiver of any provision of this Agreement. No modification, amendment, or waiver of this Agreement shall be binding unless expressly agreed to in writing and signed by each of the Parties hereto.

Plaintiff argues this provision means the Net Sales Provision would remain enforceable notwithstanding a material breach of the Agreement by Plaintiff. However, Defendant does not argue Plaintiff has by his actions "waived" the Net Sales Provision of the Agreement. Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Bombardier Cap., Inc. v. Lake Hickory Watercraft, Inc.,* 178 N.C. App. 535, 540, 632 S.E.2d 1902, 196 (2006). Instead, Defendant alleges Plaintiff's antecedent material breach of his obligation under the Agreement as a defense to her obligation to perform under the Agreement: Plaintiff first breached the contract, and Defendant's breach is therefore excused. This is a different legal mechanism entirely from waiver, and the Waiver and Modification provision cannot reasonably be understood to foreclose that defense.

## II. Rescission

We next consider Plaintiff's argument that the trial court "erroneously treated a breach of the contract as an automatic rescission." The trial court, upon receiving

13

the jury's determination that both parties breached the Agreement, concluded "neither party has any obligation to the other based on that contract" and ordered the proceeds from the sale of the property be paid to Defendant. Plaintiff argues this functioned as a rescission of the contract, which was an inappropriate remedy.

"Appellate review of the trial court's conclusions of law is de novo." *Knuckles v. Simpson*, 293 N.C. App. 260, 264, 900 S.E.2d 336, 340 (2024). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Universal Life Ins. Co. v. Lindberg*, 291 N.C. App. 506, 511, 896 S.E.2d 57, 62 (2023) (citations and quotation marks omitted).

"Rescission is an equitable contract remedy that differs from its legal counterparts. While legal remedies generally compensate the non-breaching party as if there were no breach, rescission treats both parties as if there were no contract." *Morris v. Scenera Rsch., LLC*, 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016). "Rescission does not merely terminate the contract so as to release the parties from *further* obligations to each other; rather, it abrogates the contract *from its beginning* and restores the parties to the position they would have been in had the contract not been made." *Johnson v. Smith, Scott & Assocs., Inc.*, 77 N.C. App. 386, 389, 335 S.E.2d 205, 207 (1985) (emphasis added).

As an equitable remedy, rescission is not available when the complaining party "has a full and complete remedy at law." *Morris* at 867, 788 S.E.2d at 161. Plaintiff argues there were appropriate remedies at law, and the trial court could not have

14

ordered rescission because it was not requested as a remedy by either party. However, we need not reach the question of whether the trial court in this case could order rescission because the trial court's order does not represent a rescission of the contract.

The parties were not placed in the position they would have occupied had there been no contract. *Johnson* at 389, 335 S.E.2d at 207. Instead, the trial court treated each party's breach as excusing the other's remaining obligations, leaving the parties where they stood at the time of the ruling rather than canceling the contract from its inception. This is not the function of rescission, which abrogates the contract entirely and places the parties in the position they had been in had the contract not been made. *Id.* Here, under the Agreement, Plaintiff made mortgage and HOA payments and occupied the Condominium, which Defendant owned, without paying rent. A rescission of the Agreement would necessarily account for such partial performance in order to restore the parties to the position they would have been in had the Agreement not been entered into. *Id.* The trial court instead ordered no *further* performance was required under the Agreement. Defendant's argument that the trial court inappropriately applied rescission as a remedy therefore fails because the trial court did not rescind the Agreement.

### III.    Malicious Prosecution

Plaintiff last argues Defendant's testimony as to the amount of damages was insufficient to support a directed verdict on her claim of malicious prosecution. We disagree.

As with a motion for JNOV, the trial court in ruling on a motion for directed verdict determines whether the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to support a verdict in the nonmovant's favor. *West v. Slick,* 313 N.C. 33, 40, 326 S.E.2d 601, 606 (1985). Any party may move for a directed verdict at the close of all the evidence, including the party with the burden of proof. *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979); N.C. Gen. Stat. § 1A-1, Rule 50. But even when that party has presented sufficient evidence to support its claim, "verdicts in favor of the party with the burden of proof are rarely granted." *Primerica,* 211 N.C. App. at 257, 712 S.E.2d at 675 (citation omitted). "This is so because, even though proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by proponent." *Burnette*, 297 N.C. at 536, 256 S.E.2d at 395. Nonetheless "a directed verdict or a judgment notwithstanding the verdict may be entered in favor of the party with the burden of proof 'where credibility is manifest as a matter of law.'" *Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986) (citation omitted). "In such situations it is proper to direct verdict for the party with the burden of proof if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be

drawn." *Burnette*, 297 N.C. at 536, 256 S.E.2d at 395. Still, "the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury." *Smith* at 528, 340 S.E.2d at 412.

In this case, the trial court made an entry of default in favor of Defendant on her claim for malicious prosecution, and the only remaining issue was that of damages. Defendant testified to those damages:

> Q. Within a few days of April 14th, 2021, when [Plaintiff] was evicted, what, if anything, did you receive in terms of a criminal charge?
>
> A. Yes. So this is when I was served with a larceny charge saying that I stole the Louie Vuitton bag that he gifted me years prior.
>
> . . . .
>
> Q. And . . . did you have to incur attorney's fees to handle this criminal charge?
>
> A. Yes, I did.
>
> Q. Do you remember what those were?
>
> A. I think $2,500 for this charge.

Thereafter, the following exchange occurred between Plaintiff's attorney and Defendant:

> Q. You testified that you paid $2,500 to [an attorney] for a misdemeanor case where [Plaintiff] didn't show up to court.
>
> A. Yes, sir.
>
> Q. Did you get a receipt for that?

A. I do. I did.

Q. All right. Where's the receipt?

A. I do not have it with me. It's in the invoice from [the attorney].

Our Supreme Court has noted three scenarios where credibility is manifest as a matter of law:

> (1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.
>
> (2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents.
>
> (3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

*Smith*, 315 N.C. at 528, 340 S.E.2d at 411 (citations omitted). Plaintiff has not admitted the amount of damages and the controlling evidence is not documentary, so we address the third scenario.

Plaintiff has "failed to point to specific areas of impeachment and contradictions" on the question of the amount of Defendant's damages resulting from the malicious prosecution. *Id.* He introduced no evidence regarding the amount of attorney's fees paid by Defendant and identifies no reason why discovery of such evidence was not performed. Additionally, the record does not indicate any doubts, other than latent doubts, have been raised as to Defendant's credibility on this issue.

18

Her testimony was consistent as to the amount. *See United Virginia Bank/Citizens & Marine v. Woronoff,* 50 N.C. App. 160, 164, 272 S.E.2d 618, 621 (1980) Moreover, Plaintiff had the opportunity to cross-examine Plaintiff on this issue, did so, and was unable to identify any contradictions or raise further doubt as to her credibility. Because Defendant's credibility on this issue was manifest as a matter of law, the trial court did not err in granting her Motion for directed verdict.

## **Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

Judge FLOOD concurs. Judge STADING concurs in part and dissents in part by separate opinion.

STADING, Judge, concurring in part and dissenting in part.

I concur with the majority's holding as to Issue III regarding malicious prosecution. Still, I write separately to dissent because the majority's analysis of Issues I and II sidesteps whether the trial court erred in concluding "neither party has any obligation to the other based on that contract." This is not a case where the evidentiary record permits us to ascertain the jury's determinations when rendering their verdict. As there are insufficient factual findings to determine the appropriateness of the trial court's conclusion, this Court should order a new trial on the issue of breach.

As an initial matter, the trial court's order did not constitute an automatic rescission of the Agreement. In this case, the parties were not placed in the position they would have occupied had there been no contract. *See Johnson v. Smith, Scott & Assocs., Inc.*, 77 N.C. App. 386, 389, 335 S.E.2d 205, 207 (1985) (emphasis added) ("Rescission does not merely terminate the contract so as to release the parties from *further* obligations to each other; rather, it abrogates the contract *from its beginning* and restores the parties to the position they would have been in had the contract not been made."). While the majority opinion concludes as much, it does not address how the trial court's conclusion that "neither party has any obligation to the other based on that contract[ ]" was therefore appropriate.

Likewise, in affirming the trial court's denial of Plaintiff's JNOV motion, the majority concludes there was "more than a scintilla of evidence" from which the jury

could determine Plaintiff materially breached the Agreement. *See Lake Mary Ltd. Partnership v. Johnston,* 145 N.C. App. 525, 536–37, 551 S.E.2d 546, 554–55 (2001). From there, however, the majority opinion merely recites Defendant's antecedent breach allegation and concludes waiver was inapplicable. Aside from a footnote concluding Plaintiff was not prevented from performing and Defendant subsequently breached, the majority opinion does not offer an analysis of Defendant's antecedent breach defense or Plaintiff's prevention. Since this Court cannot answer these threshold questions given the record before us, we therefore cannot conduct meaningful appellate review. Consequently, a new trial on the issue of breach of contract is appropriate.

## I. Inadequacy of Factual Findings

Plaintiff maintains, "[t]he jury's verdict does not specify the exact way that [he] breached the contract[,]" and the trial court "misinterpreted the 'double breach' as grounds to void the entire contract." Likewise, both parties dispute the manner and timing of each breach. Because neither the trial court's order nor the verdict sheet contained findings necessary to evaluate the appropriateness of the trial court's conclusion, this Court is precluded from conducting meaningful appellate review.

Contrary to the majority's assertion, this conclusion is not based on a review of the adequacy of the jury instructions and verdict sheet—an issue unpreserved for appellate review. *See* N.C. R. App. P. R. 28(b)(6), (c). Rather, this conclusion is based on the absence of factual findings therefrom. *See Coble v. Coble*, 300 N.C. 708, 712,

268 S.E.2d 185, 189 (1980). Indeed, our review of the trial court's order, which was appealed, comes before this Court on de novo review. *See Knuckles v. Simpson*, 293 N.C. App. 260, 264, 900 S.E.2d 336, 340 (2024). Under de novo review, this Court is without the necessary factual findings to evaluate the appropriateness of the trial court's conclusion. And since appellate courts are not fact-finding courts, the appropriate course of action is to order a new trial on the issue of breach. *See LouEve, LLC v. Ramey*, 286 N.C. App. 263, 272, 880 S.E.2d 431, 437–38 (2022).

In a jury trial, the jury serves as the factfinder. *Coletrane v. Lamb*, 42 N.C. App. 654, 657, 257 S.E.2d 445, 447 (1979) ("It is the province of the jury to weigh the evidence and determine questions of fact."). When a jury serves as factfinder, "[i]t is an elementary principle of law that the trial judge must submit to the jury such issues as are necessary to settle the material controversies raised in the pleadings and supported by the evidence." *Griffis v. Lazarovich*, 161 N.C. App. 434, 440, 588 S.E.2d 918, 922–23 (2003) (citation omitted).

Our Supreme Court has highlighted the importance of fact-finding for proper appellate review:

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to

perform their proper function in the judicial system. . . .

> Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble*, 300 N.C. at 712–14, 268 S.E.2d at 189–90 (citation modified).

A jury discloses its factual findings on a verdict sheet, which is considered in light of the jury instructions. *See Kimbrell v. Roberts*, 186 N.C. App. 68, 80, 650 S.E.2d 444, 451 (2007). While the majority opinion does not include the jury instructions, they are necessary to determine the appropriateness of the trial court's conclusion. Indeed, a close reading of the jury instructions and verdict sheet reveals this Court is precluded from conducting meaningful appellate review on the issue of breach as the jury's findings remain unclear.

With respect to whether Defendant breached, the trial court instructed:

> Did Defendant breach the contract (Settlement Agreement) by non-performance?
>
> On this issue, the burden of proof is on Plaintiff. This means that Plaintiff must prove by the greater weight of the evidence two things:
>
> First, that the time had come for Defendant to perform or abide by a material term of the contract. This means that, at the time of the alleged breach[,] each condition precedent to Defendant's obligation to perform was satisfied or Defendant had prevented Plaintiff from

performing a condition precedent to Defendant's obligation to perform. A condition precedent is a requirement that some act or event occur or not occur before a party to a contract becomes obligated to perform. A condition precedent may be written, oral[,] or implied from the circumstances.

Second, that Defendant failed to perform or abide by a material term of the contract. A material term is a term which is essential to the transaction, that if omitted or modified, would cause one of the parties to withhold assent or to bargain for a substantially different term. Not every term in a contract is material. . . .

In this case, Plaintiff contends, and Defendant denies, that Plaintiff was ready, willing and able to perform his obligations and that Defendant had prevented Plaintiff from performing a condition precedent to Defendant's obligation to perform by preventing Plaintiff from timely paying the mortgage payments and homeowner's association dues, removing and otherwise releasing Defendant of all liability associated with the Unit, or interfering with the sale of the Unit in violation of the Settlement Agreement.

Plaintiff further contends, and Defendant denies, that Defendant failed to perform a material term of the contract by failing to, by quit claim [sic] deed, transfer all of her ownership interest in the Unit to Plaintiff at the time Plaintiff removed and otherwise released Defendant from any and all liability associated with the Unit.

Finally, as to the First Issue on which Plaintiff has the burden of proof, if you find by the greater weight of the evidence that Defendant breached the contract by non-performance, then it would be your duty to answer this issue "Yes" in favor of Plaintiff.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of the Defendant.

Next, the trial court instructed the jury on the question of Plaintiff's breach:

> If Defendant did breach the contract (Settlement Agreement) by non-performance, did Plaintiff also breach the contract (Settlement Agreement) by non-performance? On this issue, the burden of proof is on Defendant. This means that Defendant must prove by the greater weight of the evidence two things:
>
> <u>First</u>, that the time had come for Plaintiff to perform or abide by a material term of the contract. This means that at the time of the alleged breach each condition precedent to Plaintiff's obligation to perform was satisfied. A condition precedent is a requirement that some act or event occur or not occur before a party becomes obligated to perform. . . .
>
> <u>Second</u>, that Plaintiff failed to perform or abide by a material term of the contract. As I previously instructed you, a material term is one that is essential to the transaction, that is, a term which if omitted or modified, will cause one of the parties to withhold assent or to bargain for a substantially different term. Not every term in a contract is material. A party's failure to perform a term that is not material is not a breach of contract. . . .
>
> In this Case, Defendant contends, and Plaintiff denies, that Defendant was ready, willing and able to perform her obligation and there were no conditions precedent to Plaintiff's obligation to perform, or that Plaintiff had it within his power or control to perform the conditions precedent to Defendant's obligation to perform but, without reasonable excuse, failed to do so by failing to timely pay all mortgage payments and homeowners association dues as well as remove or otherwise release Defendant of all liability associated with the Unit. Defendant further alleges that after Plaintiff failed to timely pay and service all expenses and debts associated with the Unit and failed to otherwise release Defendant from any and all liability associated with the Unit, and Plaintiff did not immediately vacate and relinquish possession of the Unit to Defendant.

Finally, as to the Second Issue on which Defendant has the burden of proof, if you find by the greater weight of the evidence that Plaintiff breached the contract by non-performance, then it would be your duty to answer this issue "Yes" in favor of Defendant.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Plaintiff.

The verdict sheet broadly presented four issues:

1.    Did Defendant breach the contract (Settlement Agreement) by non-performance?
2.    If Defendant did breach the contract (Settlement Agreement) by non-performance, did Plaintiff also breach the contract (Settlement Agreement) by non-performance?
3.    Did Plaintiff reside in the Unit (Condominium) and benefit from payments made by Defendant without reimbursing Defendant?
4.    What amount is Defendant entitled to recover for unjust enrichment?

The jury answered "Yes" to issues 1 and 2, finding both Plaintiff and Defendant breached the Agreement by nonperformance.  Additionally, the jury answered "No" to issue 3, and left issue 4 unanswered.

Following the jury's verdict, the trial court concluded:

[T]he Court determines that the contract at issue . . . was breached by both parties and, therefore, neither party has any obligation to the other based on that contract.  Since neither party has any obligation to the other based on the contract, all of the proceeds of the sale of the property, were properly disbursed and the proceeds deposited . . . should be paid to Defendant . . . .

While the jury was instructed as to both prevention and antecedent breach, it

remains unclear whether the jury found either of those theories. Although the majority concludes the trial court treated each breach as excusing the other's performance, the verdict sheet leaves unresolved how each party's obligation became due and whether the other's performance was excused. And even though the trial court's order did not amount to rescission, this Court is nevertheless unable to determine whether the trial court's conclusion that "neither party has any obligation to the other based on that contract[ ]" is appropriate. *See Templeton v. Town of Boone*, 208 N.C. App. 50, 54, 701 S.E.2d 709, 712 (2010) (cleaned up) ("[A] trial court's ruling must be upheld if it is correct upon any theory of law and should not be set aside merely because the court gives a wrong or insufficient reason for it."). The two permissible theories excusing the parties' remaining obligations were prevention and antecedent breach.

## A. Prevention

The doctrine of prevention provides, "one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." *Propst Constr. Co v. Dept. of Transp.*, 56 N.C. App. 759, 762, 290 S.E.2d 387, 388 (1982) (citing *Harwood v. Shoe*, 141 N.C. 161, 163, 53 S.E. 616, 616 (1906)). To excuse nonperformance, prevention must have been wrongful and in excess of legal rights. *See Goldston Bros. v. Newkirk*, 233 N.C. 428, 432, 64 S.E.2d 424, 427 (1951).

With respect to Defendant's breach, the jury was instructed to find that the

time for Defendant's performance had arrived. That finding, in turn, required the jury to determine either that (1) each condition precedent to Defendant's performance was satisfied, or (2) Defendant prevented Plaintiff from performing a condition precedent. With respect to prevention, the jury was instructed as to Plaintiff's contention that Defendant "prevent[ed] Plaintiff from timely paying the mortgage payments and homeowner's association dues, removing and otherwise releasing Defendant of all liability associated with the Unit, or interfering with the sale of the Unit in violation of the Settlement Agreement."

Here, the jury found that Defendant had breached the Agreement, which, based on the jury instructions, necessarily required a finding that the time for Defendant's performance had arrived. However, the verdict sheet does not reveal the jury's basis for finding that the time for Defendant's performance had arrived. It remains unclear whether the jury found that each condition precedent to Defendant's performance was satisfied, or that Defendant prevented Plaintiff from performing a condition precedent.

This fact-finding deficiency is problematic because absent the jury's finding that Defendant prevented Plaintiff's performance, it could be improper to find Plaintiff in breach.[3] *See, e.g., Propst Constr. Co.*, 56 N.C. At 762, 290 S.E.2d at 388.

---

[3] Defendant's "Amended Answer To Amended Complaint, and Amended Counterclaim" contained both an affirmative defense of antecedent breach and prevention. These legal theories do not appear to be addressed or considered by the jury or the trial court in its final order.

Accordingly, the record here precludes us from determining the "precise nature of the breach which the jury must have found." *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 292 N.C. 557, 565, 234 S.E.2d 605, 609 (1977) (citing *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 499–500, 51 S. Ct. 513, 515 (1931)).

## B. Antecedent Breach

The doctrine of antecedent breach recognizes "the general rule governing contracts . . . that if either party commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Crosby v. Bowers*, 87 N.C. App. 338, 345, 361 S.E.2d 97, 102 (1987); *see also McClure Lumber Co. v. Helmsman Constr., Inc.*, 160 N.C. App. 190, 198, 585 S.E.2d 234, 239 (2003). Despite this general rule, "[f]ailure to perform an independent promise does not excuse nonperformance on the part of the other party." *Williams v. Habul*, 219 N.C. App. 281, 293–94, 724 S.E.2d 104, 112 (2012).

> Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties.

*Harris & Harris Const. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (citations omitted).

In this case, to find that Plaintiff breached, the jury was instructed to find that

the time for Plaintiff's performance had arrived. That finding, in turn, required the jury to find that each condition precedent to Plaintiff's performance was satisfied. With respect to this finding, the jury was instructed as to Defendant's contention that either (1) "there were no conditions precedent to Plaintiff's obligation to perform," or (2) "Plaintiff had it within his power or control to perform the conditions precedent to Defendant's obligation to perform but, without reasonable excuse, failed to do so . . ."

Here, the jury found Plaintiff breached, which, based on the jury instructions, necessarily required a finding that the time for Plaintiff's performance had arrived. Accordingly, to make this finding, the jury necessarily found that each condition precedent to Plaintiff's performance was satisfied. However, the verdict sheet does not reveal whether the jury found that no conditions precedent to Plaintiff's own performance existed, or that Plaintiff had the power and ability to perform the conditions precedent to Defendant's obligation but failed to do so without reasonable excuse.

Additionally, the verdict sheet failed to ask the jury to find which party initially breached the Agreement. This temporal question is necessary to determine whether a party's performance could be excused. *See Millis Constr. Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 512, 358 S.E.2d 566, 570 (1987) (citation omitted) ("The general rule governing bilateral contracts requires that if either party commits a material breach of the contract, the other party should be excused from the obligation to further perform."); *see also* Restatement (Second) of Contracts § 237

cmt. b (1981) ("The central problem is in determining which party is chargeable with the first uncured material failure of performance."). Likewise, the record does not show the trial court considered which promises, if any, were independent.

Nevertheless, the majority maintains:

> when reviewed in context, the jury's verdict—informed by the jury instructions—reflects the jury found Plaintiff was not prevented from performing his obligations under the Agreement, Plaintiff materially breached the Agreement by failing to remove Defendant from the mortgage, pay expenses, and vacate the property, and *subsequently*, Defendant breached the contract by failing to transfer title.

This determination is based on fact-finding assumptions this Court may not make. In asserting the jury found all the above, the majority opinion disregards that the jury was presented with two alternatives for finding each condition precedent to the other's performance was satisfied.

As detailed above, the jury was permitted to find *either*: (1) each condition precedent to Defendant's performance was satisfied, *or* (2) that Defendant prevented Plaintiff from performing a condition precedent. Likewise, with respect to Plaintiff's breach, the jury was permitted to find *either*: (1) "there were no conditions precedent to Plaintiff's obligation to perform," *or* (2) "Plaintiff had it within his power or control to perform the conditions precedent to Defendant's obligation to perform but, without reasonable excuse, failed to do so . . ." There was no requirement or indication that the jury find both. From here, the majority's position that Plaintiff was not prevented and Defendant subsequently breached is an unsupported assumption. This

assumption serves as the basis for the majority's underlying analysis. Yet, we are without findings as to whether the jury found prevention or antecedent breach.

For these reasons, the appropriate course of action would be to order a new trial on the issue of breach of contract. *See Fortune v. First Union Nat'l Bank*, 323 N.C. 146, 151, 371 S.E.2d 146, 486 (1988); *see also Weyerhaeuser Co.*, 292 N.C. at 566, 234 S.E.2d at 610 (awarding a new trial on the defendant's counterclaim in its entirety because, among other things, "[t]he jury found only that defendant had breached the contract, not that the breach was material or that it excused plaintiff's performance.").

## II. Conclusion

I concur with Issue III of the majority opinion. However, I dissent and write separately since there are insufficient facts to support the majority's analysis and determine the appropriateness of the trial court's conclusion. Accordingly, this Court should order a new trial on the issue of breach.