Belmont Korners, LLC v. Lynk Invs., LLC, 2026 NCBC 55.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

BELMONT KORNERS, LLC;
BELMONT KORNERS MANAGER,
LLC; BELMONT KORNERS
PROPERTIES, LLC and BELMONT
DEVELOPMENT PARTNERS, LLC,

        Plaintiffs,

v.

LYNK INVESTMENTS, LLC; RATB
BELMONT, LLC; BENJAMIN
LYONS; DEANNE TOAL-
BROTHERS; MATTHEW
BROTHERS and RONALD STALEY,
JR.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV053946-590

**ORDER AND OPINION ON
DEFENDANTS LYNK INVESTMENTS,
LLC, RATB BELMONT, LLC,
BENJAMIN LYONS, DEANNE TOAL-
BROTHERS, AND MATTHEW
BROTHERS' MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court upon Defendants Lynk Investments, LLC ("Lynk"), RATB Belmont, LLC ("RATB"), Benjamin Lyons ("Lyons"), Deanne Toal-Brothers ("Toal-Brothers"), and Matthew Brothers' ("Brothers") (collectively, the "Lynk Defendants") Motion to Dismiss (the "Motion"), filed pursuant to Rules 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)") on 15 January 2026 in the above-captioned case.[1]

2.    Having considered the Motion, the parties' briefs in support of and opposition to the Motion, the Complaint,[2] the arguments of counsel at the hearing on

---

[1] Mot. Dismiss, ECF No. 18.

[2] Compl., ECF No. 5.

the Motion, and other appropriate matters of record, the Court **hereby GRANTS** the Motion as set forth below.

> *Elliott Law Firm, PC, by Michael K. Elliott, for Plaintiffs, Belmont Korners, LLC, Belmont Korners Manager, LLC, Belmont Korners Properties, LLC, and Belmont Development Partners, LLC.*
>
> *Poyner Spruill LLP, by John Michael Durnovich and Thomas L. Ogburn III, for Defendants Lynk Investments, LLC, RATB Belmont, LLC, Benjamin Lyons, Deanne Toal-Brothers, and Matthew Brothers.*
>
> *Defendant Ronald Staley, unrepresented.*

Shirley, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact when ruling on motions to dismiss under Rule 12(b)(6).   Rather, the Court recites the allegations asserted and documents referenced in the challenged pleading—here, Plaintiffs' Complaint—that are relevant and necessary to the Court's determination of the Motions.  The following background assumes that the well-pleaded factual allegations of the Complaint are true.  *See, e.g., White v. White*, 296 N.C. 661, 667 (1979) (requiring the trial court to treat a complaint's allegations as true under Rule 12(b)(6)).

4.     In 2008, Roger and Perina Stewart (the "Stewarts") sought and obtained rezoning of real property located on Belmont Avenue in Charlotte, North Carolina (the "Property"), to allow construction of condominiums and retail space.[3]  In 2009,

---

[3] Compl. ¶¶ 12–13.

the Stewarts formed Plaintiff Belmont Korners, LLC ("Belmont Korners") and conveyed the Property to Belmont Korners.[4]

5. However, the Property remained undeveloped for several years due to lack of financing.[5] In 2018, the Stewarts sought a development partner and were introduced to Defendant Ronald Staley ("Staley"), who represented himself as an experienced real estate developer.[6]

6. On 27 February 2020, the Stewarts and Staley, owner of Verde Homes, executed an operating agreement for Plaintiff Belmont Korners Properties, LLC ("Belmont Properties").[7] Under that agreement, Belmont Korners held an 80% membership interest in Belmont Properties, and Belmont Korners Investor, LLC, an entity affiliated with Staley, held the remaining 20%.[8] Plaintiff Belmont Korners Manager, LLC ("Belmont Manager") was appointed as Belmont Properties' manager, and Staley managed Belmont Manager.[9] The Property was conveyed to Belmont Properties.[10]

---

[4] Compl. ¶¶ 14–15.

[5] Compl. ¶¶ 16–18.

[6] Compl. ¶¶ 19–21.

[7] Compl. ¶¶ 20, 30.

[8] Compl. ¶¶ 29, 31.

[9] Compl. ¶ 32.

[10] Compl. ¶¶ 22, 38.

7.     Under the operating agreement of Belmont Properties, Staley's entity was responsible for seeking financing and paying costs associated with the Property until financing closed.[11]  On or about 5 November 2020, Staley applied for a construction loan from Lynk in the principal amount of $6,035,000.00, which Lynk approved.[12]

8.     On 1 December 2020, Belmont Properties and Verde Homes entered into a construction contract to develop the Property.[13]  Plaintiffs allege that, after demolition was completed, Staley did no significant work on the Property even though he continued to receive draws from Lynk on the construction loan.[14]

9.     The loan was scheduled to mature on 1 July 2022.[15]  In June 2022, Lynk made a second loan in the amount of $7,100,000.00 to refinance the first loan and provide additional funds that Staley claimed were needed.[16]  Plaintiffs allege that, despite Staley's repeated assurances, no substantial progress was made on the construction project.[17]

---

[11] Compl. ¶ 33; *See* Operating Agreement of Belmont Korners Props., LLC art. 5 § 4, ECF No. 36.

[12] Compl. ¶¶ 34, 37.

[13] Compl. ¶ 36.

[14] Compl. ¶¶ 40–41.

[15] Compl. ¶ 42.

[16] Compl. ¶ 44.

[17] Compl. ¶¶ 46–48.

10. In October of 2023, a "Development Review/Update Meeting" was held.[18] At that meeting, Staley proposed a larger project and represented that a bank, "presumably Lynk," wanted to participate as an equity partner.[19] Plaintiffs further allege, upon information and belief, that "Lynk was financing at least five other construction projects for Staley during the same period of time" as the first two loans were made to Belmont Properties, and that Lynk "knew that Staley was moving funds between all the projects Lynk was financing."[20]

11. After a different entity owned by Staley went bankrupt on 11 October 2023, Staley allegedly abandoned the project and ceased communicating with the Stewarts.[21] The Stewarts then learned that the second loan with Lynk was in default.[22]

12. In November 2023, the Stewarts, acting through counsel, caused a letter to be sent to Staley notifying him of alleged misconduct and demanding turnover of company property and project documents.[23] Plaintiffs allege that Staley did not respond to the letter or turn over any documents as requested.[24]

---

[18] Compl. ¶ 50.

[19] Compl. ¶ 51.

[20] Compl. ¶¶ 52–53.

[21] Compl. ¶ 54.

[22] Compl. ¶ 55.

[23] Compl. ¶ 56; Compl., Ex. C.

[24] Compl. ¶ 57.

13. In mid-October of 2023, the Stewarts began communicating with Lynk through Brothers, regarding the loan default and Staley's action or inaction.[25] Plaintiffs allege that Brothers stated Lynk did not plan to foreclose and wanted to have Staley removed and Lynk take Staley's place in the project.[26]

14. Those discussions culminated in a 12 January 2024 meeting involving the Stewarts, Angela Ambroise, a real estate professional, and Lynk's representative Stephen Valentine ("Valentine").[27] Plaintiffs allege that the parties agreed that a new company, Plaintiff Belmont Development Partners, LLC ("Belmont Development"), would be formed; Belmont Korners would own 30%, and a new company to be formed by Lynk ("RATB"), would own 70%; Valentine would manage Belmont Development; Belmont Korners would convey the Property to Belmont Development; and Lynk would execute a forbearance agreement.[28]

15. Belmont Development was formed on 20 February 2024.[29] Roger Stewart signed the operating agreement of Belmont Development (the "Operating Agreement") on behalf of Belmont Korners on 19 February 2024; Valentine signed the agreement on or about 21 February 2024 on behalf of RATB and as manager of Belmont Development; the signature line for RATB states: "RATB Belmont, LLC a North

---

[25] Compl. ¶ 58.

[26] Compl. ¶ 59.

[27] Compl. ¶¶ 20, 61.

[28] Compl. ¶ 62.

[29] Compl. ¶ 64; Compl., Ex. D – Operating Agreement of Belmont Development Partners, LLC [hereinafter, "Belmont Development Operating Agreement"].

Carolina limited liability company"[30] Plaintiffs allege that RATB had not been formed with the North Carolina Secretary of State when Valentine signed the Operating Agreement and remained unformed as of 10 October 2025.[31] While the parties never executed the forbearance agreement,[32] Lynk never took action to foreclose on the overdue notes.

16. On 3 April 2024, the Property was allegedly[33] conveyed by Belmont Korners to Belmont Development, and since then no further development was made on the Property despite the Stewarts' numerous inquiries with Defendant Matthew Brothers.[34]

17. In September 2025, the Stewarts learned that RATB was never formed, Valentine was no longer an employee of Lynk, and that Lyons, Toal-Brothers, and Brothers were now listed as the Managers for Belmont Development.[35] Plaintiffs allege that Belmont Korners never elected those individuals as successor managers.[36]

---

[30] Compl. ¶ 66; Belmont Development Operating Agreement.

[31] Compl. ¶¶ 70–71, 77. RATB was formed and registered with the North Carolina Secretary of State on 16 October 2025. Br. Supp. Mot. Dismiss, Ex. 1, ECF No. 19.1.

[32] Compl. ¶ 74.

[33] It is not entirely clear whether the Property was owned by Belmont Korners when this transfer happened. The Property was conveyed from Belmont Korners to Belmont Properties after the execution of the operating agreement of Belmont Properties. However, the record does not show whether or when the Property was transferred back to Belmont Korners.

[34] Compl. ¶¶ 73, 75–76.

[35] Compl. ¶¶ 78–79.

[36] Compl. ¶¶ 80, 82.

18.     On or about 9 October 2025, the Stewarts also learned that the property had been listed for sale.[37]  Plaintiffs allege that Belmont Korners never approved a sale and that Lynk, Lyons, Toal-Brothers, and Brothers "commandeered the property" and excluded Plaintiffs from decision-making and ownership benefits.[38]

19.     On 29 October 2025, Plaintiffs filed the Complaint, (a) seeking declaratory judgment that Belmont Korners is the sole member of Belmont Development and that title to the Property should be restored to Belmont Korners, (b) asserting claims against (i) Staley for breach of contract, (ii) Lynk and Staley for breach of fiduciary duty, fraud, fraudulent inducement, and constructive fraud, and (iii) Lynk, Lyons, Toal-Brothers, and Brothers for civil conspiracy, unfair and deceptive trade practices, and unjust enrichment, as well as seeking (c) imposition of a constructive trust over any loan draws from the first and second loans, (d) recovery of punitive damages against all Defendants, and (e) for an accounting and appointment of a referee.[39]

20.     This case was designated as a mandatory complex business case on 19 November 2025 and assigned to the Honorable A. Todd Brown.[40]  This case was re-assigned to the undersigned on 4 March 2026.[41]

---

[37] Compl. ¶ 83.

[38] Compl. ¶¶ 84–86.

[39] Compl. ¶¶ 87–147.

[40] Assignment Order, ECF No. 2.

[41] Reassignment Order, ECF No. 31.

21.     The Lynk Defendants filed the Motion on 15 January 2026, and, after full briefing, the Court held a hearing on the Motion on 7 April 2026, at which the Lynk Defendants and Plaintiffs were represented by counsel.  Defendant Staley was not present.  The Motion is now ripe for resolution.

**II.**

**LEGAL STANDARD**

22.     In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the pleading and "any exhibits attached to the [pleading,]" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018), to determine "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Pro. Window Cleaning, Inc.*, 120 N.C. App. 154, 158 (1995). Additionally, a court may "properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

23.     Under Rule 12(b)(6), "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all well-pleaded factual allegations contained within the [pleading]." *Donovan v. Fiumara*, 114 N.C. App. 524, 526 (1994) (cleaned up); *see also Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (under Rule 12(b)(6), the allegations of the complaint should be viewed as "true and in the light most favorable to the non-moving party") (cleaned up).  The claim is not to be dismissed unless it appears *beyond doubt* that

the non-moving party could prove *no* set of facts in support of his claim which would entitle him to relief. *U.S. Bank Nat'l Ass'n v. Pinkney*, 369 N.C. 723, 726 (2017) (emphasis added). The Supreme Court of North Carolina has determined that "dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

## III.

## ANALYSIS

24. The Lynk Defendants move the Court to dismiss Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh[42] Claims for Relief against them pursuant to Rule 12(b)(6).[43] The Court will take up each claim in turn.

### A. **Claims Asserted Collectively by Multiple Plaintiffs**

25. As an initial matter, the Complaint frequently refers to "Plaintiffs" collectively. Collective pleading is not fatal when the factual allegations "give the

---

[42] There is a second "Tenth Claim for Relief" in the Complaint, an apparent error. For the purpose of this Order, Plaintiffs' claim for Accounting and Motion for Referee is treated as the "Eleventh Claim for Relief."

[43] Mot. Dismiss, ECF No. 18. Plaintiffs have asserted the Third, Fourth, Fifth, Tenth and Eleventh, Claims for Relief against one or more of the Lynk Defendants and against Staley. As Staley has not filed a Motion to Dismiss, this Order only addresses claims to the extent they are asserted against one or more of the Lynk Defendants.

court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." *Martin v. Martin*, 266 N.C. App. 296, 298–99 (2019) (citing N.C. Gen. Stat. § 1A-1, Rule 8(a)(1) (quotation marks omitted)). Where multiple plaintiffs and multiple defendants are involved, the pleading must allege facts showing that the plaintiff asserting the claim has standing to seek relief and that the defendant against whom relief is sought engaged in conduct sufficient to support liability. *See Plasman v. Decca Furniture (USA), Inc.*, 257 N.C. App. 684, 690–91 (2018); *Oberlin*, 147 N.C. App. at 57 (2001).

26. Here, the factual allegations regarding the 2024 restructuring, the alleged misrepresentation concerning RATB's existence, and the April 2024 conveyance of the Property principally concern Belmont Korners and Belmont Development. The Complaint alleges little, if any, conduct by the Lynk Defendants directed to Belmont Manager or Belmont Properties after the October–November 2023 transition from the Staley-controlled structure. Nor does the Complaint allege that Belmont Development, the entity that now allegedly owns the Property, was injured by receiving title to the Property or by the alleged pre-formation misrepresentation concerning RATB.

27. The Court therefore analyzes the substantive claims based on the Plaintiff or Plaintiffs for whom the Complaint pleads a plausible right to relief. To the extent any claim challenged in the Motion is asserted by Belmont Manager, Belmont Properties, or Belmont Development against one or more of the Lynk Defendants

*without factual allegations* showing an injury to that Plaintiff caused by a particular Defendant's alleged conduct, the Motion is **GRANTED**.

28. In addition, the Complaint does not allege facts showing that this action was authorized by Belmont Development through its manager or other proper company action. Thus, to the extent Belmont Korners seeks to assert claims belonging to Belmont Development, Belmont Korners must proceed derivatively and satisfy Chapter 57D's derivative action requirements, including the pre-suit demand requirement. *See* N.C. Gen. Stat. §§ 57D-8-01, 57D-8-03. Because the Complaint does not allege that Belmont Korners made a written demand on Belmont Development or plead facts showing that a pre-suit demand was excused, the Motion is **GRANTED** as to any claims asserted to vindicate Belmont Development's rights.

### B. <u>Breach of Fiduciary Duty</u>

29. Plaintiffs' Third Claim for Relief asserts breach of fiduciary duty against Lynk and Staley. The question presented by the Motion is whether Plaintiffs have pleaded facts showing that Lynk owed a fiduciary duty to any Plaintiff.

30. To state a claim for breach of fiduciary duty, a plaintiff must show that the defendant owes plaintiff a fiduciary duty. *Green v. Freeman*, 367 N.C. 136, 141 (2013). A fiduciary duty may arise by operation of law or from the facts and circumstances of the parties' relationship. *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635 (2016).

31. Plaintiffs allege that a fiduciary relationship existed between **Belmont Korners** and Lynk.[44]

32. The loans described in paragraphs 7–9 *supra*, created a lender-borrower between Lynk and Belmont Korners Properties. A lender-borrower relationship, without more, does not support a fiduciary duty claim. "Ordinary borrower-lender transactions . . . are considered arm's length and do not typically give rise to fiduciary duties." *Dallaire v. Bank of Am.*, N.A., 367 N.C. 363, 368 (2014). Plaintiffs allege that Lynk made and refinanced construction loans, forwent immediate foreclosure, and discussed a restructuring after Staley's inaction. These loans were to Belmont Korners Properties not to Belmont Korners. Those allegations do not plausibly show that Lynk held the type of domination and control necessary to create a de facto fiduciary relationship between Lynk and Belmont Korners.

33. The Complaint does not allege that Lynk was a member or manager of Belmont Development under the Operating Agreement. On the contrary, the Complaint alleges that Valentine signed the Operating Agreement of Belmont Development as manager and on behalf of RATB, and the Operating Agreement identifies Valentine, not Lynk, as the initial manager.[45] Lynk is not alleged to be a party to the Operating Agreement. Plaintiffs nevertheless contend that Lynk, by accepting the role of Manager, through its agent Stephen Valentine, undertook

[44] Compl. 100.

[45] Belmont Development Operating Agreement §§ 1.3(d), 5.1.

fiduciary duties to Belmont Korners. [46] However, the Operating Agreement establishes that Belmont Korners agreed to Steven Valentine, in his individual capacity, as manager of Belmont Development.[47]

34. The Court declines to impose fiduciary duty on the basis asserted by Plaintiffs. Plaintiffs cite no authority, and the Court is aware of none, holding that an employer or principal becomes an LLC manager, and thereby assumes the manager's fiduciary duties, merely because an alleged agent signed the Operating Agreement in an individual managerial capacity or on behalf of a different entity.[48]

35. The terms of the Belmont Development Operating Agreement further counsel against Plaintiffs' theory. Where sophisticated parties bargain for detailed terms governing their business relationship in an LLC, courts are reluctant to superimpose extra-contractual fiduciary duties inconsistent with those terms. *See Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at \*12 (N.C. Super. Ct. Aug. 7, 2017). Belmont Korners does not merely seek to impose extra-contractual fiduciary duties, it seeks to impose extra-contractual fiduciary duties on an entity, Lynk, that is not even a party to the Operating Agreement.

---

[46] Compl. ¶ 100.

[47] *See* Belmont Development Operating Agreement §§ 1.3(d), 5.1.

[48] Plaintiffs argued at the hearing in opposition to the Motion to Dismiss that it was their understanding that Lynk was the manager. The Operating Agreement contains a merger clause at section 9.9 of Article 9 which defeats this argument.

36.     Accordingly, the Motion is **GRANTED** as to Plaintiffs' Third Claim for Relief for breach of fiduciary duty against Lynk, and that claim is **DISMISSED with prejudice** as to Lynk.

### C. Fraud and Fraudulent Inducement

37.     Plaintiffs' Fourth Claim for Relief asserts fraud and fraudulent inducement against Lynk and Staley.  As to Lynk, the Complaint pleads two fraud theories: first, that Lynk falsely represented to Plaintiffs that the 2024 ownership restructuring was necessary for financing and would not affect Plaintiffs' ownership rights; and second, that Lynk falsely represented the entity ownership structure, including RATB's existence.

38.     The elements of fraud are "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007).  To sufficiently plead fraud consistent with the heightened standards of Rule 9(b), a plaintiff must allege definite and specific facts supporting the claim, including time, place, and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations.  *See Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 263 (2023) (citing *Terry v. Terry*, 302 N.C. 77, 85 (1981)); *see also Ragsdale v. Kennedy*, 286 N.C. 130, 139 (1974); N.C. Gen. Stat. § 1A-1, Rule 9(b).

39. Belmont Korners' broader ownership rights theory is not plausibly pleaded. The Complaint attaches and relies on the Operating Agreement of Belmont Development, under which Belmont Korners received a 30% membership interest and RATB received a 70% membership interest. Plaintiffs do not identify with particularity any statement by Lynk explaining how the restructuring "would not affect" ownership rights, when that statement was made, or why reliance on such a statement would be reasonable in light of the Operating Agreement's express 30/70 allocation.

40. Belmont Korners' ownership structure theory also fails to meet the heightened pleading standards of a fraud claim. Plaintiffs allege that, at the 12 January 2024 meeting, Lynk's representative Valentine agreed that RATB, a company that had not yet been formed, would hold a 70% membership interest in Belmont Development; that Valentine later signed the Operating Agreement on behalf of "RATB Belmont, LLC a North Carolina limited liability company"; that RATB did not then exist; and that Belmont Korners conveyed the Property to Belmont Development after the agreement was signed.

41. To begin with, it is not entirely clear from the Complaint which statements Belmont Korners alleges are false. Plaintiffs merely state that "Lynk knowingly and falsely represented the ownership structure, including the existence of RATB."[49] The

---

[49] Compl. ¶ 108. This allegation is contained in Plaintiffs' Fourth Claim for Relief. Under the section captioned "Background" which encompasses paragraphs 12–86 of the Complaint, there are numerous paragraphs that could be construed to allege statements made by Steven Valentine. However, there are no allegations in the Factual Background section that allege any of these statements are false. Given the heightened pleading requirements of Rule 9(b),

Court finds that this fails to meet the particularity requirements by not identifying the exact statement or statements that are alleged to be false and when the statement(s) was made.

42.     Plaintiffs' Response Brief in Opposition to Motion to Dismiss ("Plaintiff's Brief in Opposition") merely restates the allegation that "Lynk knowingly and falsely represented the ownership structure, including the existence of RATB" and  goes on to add that RATB did not exist when this representation was made and that Lynk represented RATB as a 70% member when it did not exist."[50]  Based upon this argument, the alleged statement had to be made sometime other than the 12 January 2024 meeting, as the agreement that was reached on that date, as alleged by Belmont Korners, acknowledged that RATB was not yet in existence at that time and was to be formed.[51]  As such, as best the Court can discern, the false representation(s), according to Plaintiff's Brief in Opposition, occurred on 21 February 2024 when Steven Valentine signed the Operating Agreement as the manager of Belmont Development Partners, LLC and purportedly as the manager of RATB Belmont, LLC which had yet to be formed, the argument being, implicit in that act was a representation that RATB was then in existence.

---

it is not the duty of the Court to parse through the pleadings in attempt to discern which statements a party believes are false.

[50] Pls.' Resp. Br. Opp'n Mot. Dismiss [hereinafter, "Resp. Br."] 9, ECF No. 22.

[51] Compl. ¶ 62(b).

43. Belmont Korners argues that as a result of the false representation, it signed the Operating Agreement and conveyed the Property to Belmont Development Partners, LLC.[52] That argument is unavailing for the following reasons.

44. First of all, there are no allegations in the Complaint that at the time Valentine signed the Operating Agreement he was acting as an agent of Lynk. Moreover, there are no allegations in the Complaint as to what Lynk obtained as a result of the alleged fraudulent representations. Belmont Korners alleges that its manager signed the Operating Agreement and conveyed the Property as a result of the Valentine misrepresentation. However, the Complaint alleges that Belmont Korners, through its manager, actually signed the Operating Agreement *two days prior* to Valentine signing the agreement.[53] That timeline defeats Belmont Korners' theory that it relied on the signature of Valentine as the manager of RATB, as the fraudulent representation.

45. Whatever statement regarding the existence of RATB Plaintiffs rely on in asserting that Lynk misrepresented the existence of RATB, Belmont Korners has not adequately pleaded reasonable reliance of the statement.

> Reliance on "allegedly false representations must be reasonable." *Forbis v. Neal,* 361 N.C. 519, 527 (2007*)*. When the party relying on the allegedly fraudulent or misleading statement could have discovered the truth, pleading reasonable reliance requires the party to allege either denial of the opportunity to investigate or that a reasonably diligent inquiry would not have revealed the truth. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59 (2001) (citing *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346 (1999)).

---

[52] Resp. Br. 10.

[53] Compl. ¶¶ 66–68.

*Estate of Chambers v. Vision Two Hospitality Mgmt., LLC*, 2013 NCBC LEXIS 52 at *19 (N.C. Super. Ct. Nov. 21, 2013).

46.    An LLC is formed upon the filing of Articles of Organization with the North Carolina Secretary of State.  N.C. Gen. Stat. § 57D-2-20(b).  At the time of filing, Articles of Organization become public records pursuant to N.C. Gen. Stat. § 132-1(a).  The allegations of the Complaint reveal that the Plaintiffs had the ability to and knew how to search the records of the North Carolina Secretary of State.[54]  As a result, Plaintiffs could not reasonably rely on a representation that an LLC legally existed when a check of the Secretary of State's public records would have disproved this alleged misrepresentation.

47.    The facts of this action are strikingly similar to those in *Lawrence v. UMLIC-Five Corp.,* 2007 NCBC LEXIS 20 (N.C. Super. Ct. June 18, 2007).  In *Lawrence*, the plaintiff asserted a claim for fraud arising out the defendant corporation's failure to disclose to plaintiff that the defendant was in dissolution during the pendency of a lawsuit that was filed in Travis County Texas.  Judge Diaz, in reviewing the allegations of the complaint observed:

> . . . other than parroting a legal conclusion . . . , Plaintiffs fail to set forth facts explaining why their reliance on the Defendants' silence was both reasonable and detrimental.  Indeed, the Court is hard-pressed to see how the alleged silence of the Defendants prevented Plaintiffs from searching the public records of the North Carolina Secretary of State's office during the pendency of the Travis County Litigation to ascertain for themselves the corporate status of UMLIC-Five, particularly since they allege that UMLIC-

---

[54] *See* Compl. ¶¶ 70–71; Compl. Ex. E – 2025 Annual Report of Belmont Development Partners, LLC filed with the North Carolina Secretary of State.

Five was refusing to respond to discovery on this very point. *Id.* at *12.

Judge Diaz went on to dismiss the claim for fraud pursuant to N.C. R. Civ. P. 12(b)(6) for failure to satisfy the pleading requirements of Rule 9(b). *Id.* at *12–13 as it relates to reasonable reliance.

48. Likewise, here, Plaintiffs' allegations reveal that, at the time of the 12 January 2024 Meeting and Agreement that RATB was not in existence and Belmont Korners was on notice that it was not in existence.[55] In other words, Belmont Korners was on notice that RATB needed to be formed. Other than parroting a legal conclusion, Plaintiffs fail to allege that, at the time they executed the Operating Agreement or at the time they conveyed the Property, they were either denied the opportunity to investigate or a reasonably diligent inquiry would not have revealed the truth about the existence of RATB.[56] *Oberlin Capital, L.P.*, 147 N.C. App. at 59.

49. The Plaintiffs have failed to plead their allegations of fraud with the particularity required of Rule 9(b) and therefore the Court **GRANTS** the Motion as to the Fourth Claim for Relief against Lynk, and that claim is **DISMISSED with prejudice** as to Lynk.

---

[55] Compl. ¶ 62(b).

[56] Roger Stewart signed the Operating Agreement as manager of Belmont Korners, and Belmont Korners was represented by counsel in the transaction. *See* Belmont Development Operating Agreement, Final Audit Report.

### D. Constructive Fraud

50. Plaintiffs' Fifth Claim for Relief asserts constructive fraud against Lynk and Staley.

51. A constructive fraud claim requires allegations showing that the defendant owed the plaintiff a fiduciary duty or stood in a confidential relationship with the plaintiff and took advantage of that position to benefit itself. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666 (1997); *Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 281 N.C. App. 630, 637 (2022).

52. As explained above, Plaintiffs have not pleaded facts showing that Lynk owed them a fiduciary duty or stood in a confidential relationship with them. The constructive fraud claim therefore fails for the same reason as the fiduciary-duty claim.

53. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Fifth Claim for Relief for constructive fraud against Lynk, and that claim is **DISMISSED with prejudice** as to Lynk.

### E. Civil Conspiracy

54. Plaintiffs' Sixth Claim for Relief is based on an alleged civil conspiracy against Lynk, Lyons, Toal-Brothers, and Brothers. Plaintiffs allege that these Defendants acted in concert with a common plan to "wrongfully seize control of the property, exclude the Plaintiffs and deprive them of ownership benefits."[57]

---

[57] Compl. ¶ 119.

55. It is well established that "there is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690 (2005). Rather, "civil conspiracy is premised on the underlying act." *Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 211 N.C. App. 343, 350 (2011). To plead a claim for civil conspiracy, a plaintiff must allege: "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Krawiec*, 370 N.C. at 614. A conspiracy requires an agreement between at least two persons to take an unlawful action or to take a lawful action in an unlawful manner. *See id.* at 613; *Evans v. Star GMC Sales & Serv., Inc.*, 268 N.C. 544, 546 (1966). "[S]ufficient evidence of the agreement must exist to create more than a suspicion or conjecture." *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 300 (2019) (internal quotations omitted).

56. Plaintiffs' allegations here are thin. The Complaint alleges that (i) Brothers communicated with the Stewarts, (ii) Lyons, Toal-Brothers, and Brothers later appeared as managers on an annual report, and (iii) the Property was listed for sale. It does not plead nonconclusory facts showing when Lyons, Toal-Brothers, Brothers, and Lynk allegedly reached an agreement, what each agreed to do, or what overt acts each took in furtherance of an unlawful plan.

57. The conspiracy claim also fails because the pleaded relationship among Lynk, its members or agents, and the purported managers of Belmont Development implicates the intracorporate immunity doctrine, which holds that "there can be no conspiracy between a corporation and its agents." *Vanfleet v. City of Hickory*, 2020

NCBC LEXIS 40, at *15 (N.C. Super. Ct. March 30, 2020). Plaintiffs do not plead facts showing that any individual Lynk Defendant acted outside the scope of an agency relationship or had an independent personal stake in the alleged conspiracy.

58. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Sixth Claim for Relief for civil conspiracy, and that claim is **DISMISSED with prejudice** against Lynk, Lyons, Toal-Brothers, and Brothers.

### F. Unfair or Deceptive Trade Practices[58]

59. Plaintiffs' Seventh Claim for Relief asserts that Lynk, Lyons, Toal-Brothers, and Brothers engaged in unfair or deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1.

60. To state a claim under section 75-1.1, a plaintiff must allege "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Krawiec*, 370 N.C. at 612. Section 75-1.1 does not "extend to a business's internal operations" and only applies "to interactions between market participants." *White v. Thompson*, 364 N.C. 47, 52–53 (2010).

61. Plaintiffs argue that buying, developing, lending against, and selling real estate are commercial activities. That proposition is true at a general level, but it does not answer the controlling question. The alleged misconduct here concerns the parties' restructuring of a single real estate development venture, the membership

---

[58] The Court notes, and the record reflects, that Counsel for Plaintiffs conceded to dismissal of Plaintiffs' Seventh and Eighth Claims for Relief during the hearing. The Court analyzes these claims on their merits in the alternative notwithstanding the concession.

and management of Belmont Development, and the alleged control of Property owned by Belmont Development. Those allegations describe an internal ownership and governance dispute within a single business enterprise, not marketplace conduct between separate market participants. Under *White*, that is insufficient to satisfy the commerce element of section 75-1.1.

62. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Seventh Claim for Relief for unfair or deceptive trade practices, and that claim is **DISMISSED with prejudice** against Lynk, Lyons, Toal-Brothers, and Brothers.

### G. Unjust Enrichment

63. Plaintiffs' Eighth Claim for Relief asserts unjust enrichment against Lynk, Lyons, Toal-Brothers, and Brothers. Plaintiffs allege that these defendants "asserted control and dominion over the property" and were unjustly enriched by "obtaining control over the property without providing any consideration or mutual performance."[59]

64. Unjust enrichment "is based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 96 (1966). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988) (cleaned up).

65. To state a claim for unjust enrichment, a plaintiff must allege that "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously

---

[59] Compl. ¶¶ 130–31.

accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 211 N.C. App. 252, 259–60 (2011). A claim for unjust enrichment generally will not lie where an express contract governs the parties' rights. *See Whitfield v. Gilchrist*, 348 N.C. 39, 42 (1998); *Delta Env't Consultants of N.C., Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165 (1999).

66. Plaintiffs have not pleaded facts showing that Lynk, Lyons, Toal-Brothers, or Brothers received title to the Property or otherwise personally received a measurable benefit conferred by Plaintiffs. The alleged benefit is "control" of Property that Plaintiffs allege is owned by Belmont Development, which is itself a Plaintiff. To the extent Plaintiffs contend that Lynk, Lyons, Toal-Brothers, and Brothers exceeded their authority in managing Belmont Development or listing the Property, those issues are governed by the Belmont Development Operating Agreement and may be addressed, if at all, through Plaintiffs' surviving declaratory judgment claim.

67. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Eighth Claim for Relief for unjust enrichment, and that claim is **DISMISSED with prejudice** against Lynk, Lyons, Toal-Brothers, and Brothers.

**H. Constructive Trust, Punitive Damages, and Accounting/Referee**

68. Plaintiffs' Ninth, Tenth, and Eleventh Claims for Relief seek constructive trust, punitive damages, and for an accounting and appointment of a referee. The Defendants argue that these are remedies, not standalone causes of action.

69.     The Court agrees.  A constructive trust is an equitable remedy, not an independent claim for relief.  *Glob. Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 104, at *25 (N.C. Super. Oct. 9, 2018).  Punitive damages likewise are "a remedy rather than a standalone cause of action."  *Halikierra Cmty. Servs. LLC v. N.C. HHS*, 2021 NCBC LEXIS 27, at *25 (N.C. Super. Ct. Mar. 25, 2021); *see also Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action."). An accounting "is a remedy, not an independent cause of action, and is available only if the plaintiff first shows that he lacks an adequate remedy at law and alleges facts in the complaint to that effect." *Lafayette Vill. Pub, LLC v. Burnham*, 2025 NCBC LEXIS 23, at *28 (N.C. Super. Mar. 4, 2025).  Dismissal of these "claims" does not preclude Plaintiffs from seeking these remedies if they are otherwise supported by a surviving substantive claim, proper motion, and proof.

70.     However, because Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief against Lynk, Lyons, Toal-Brothers and Brothers have been dismissed with prejudice as stated above, only the declaratory judgment claim survives.  Punitive damages are not recoverable as a remedy in a standalone declaratory judgment action. N.C. Gen. Stat. § 1D-15(a).

71.     Plaintiffs' claims for constructive trust and for an accounting and appointment of a referee are not asserted against the Lynk Defendants.  The constructive trust claim relates to proceeds from the first and second loans used by

Staley; the accounting and referee claims relate to the project and the same loans. To the extent either claim is asserted against the Lynk Defendants, it is dismissed.

72. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Ninth, Tenth, and Eleventh Claims for Relief, and those claims are **DISMISSED with prejudice** as to the Lynk Defendants.

### IV.

### CONCLUSION

73. For the foregoing reasons, the Court hereby **GRANTS** the Motion as follows:

a. The Motion is **GRANTED** as to Plaintiffs' Third Claim for Relief for breach of fiduciary duty, Fourth Claim for Relief for fraud and fraudulent inducement, and Fifth Claim for Relief for constructive fraud against Lynk, and those claims are **DISMISSED with prejudice** as to Lynk;

b. The Motion is **GRANTED** as to Plaintiffs' Sixth Claim for Relief for civil conspiracy, Seventh Claim for Relief for unfair or deceptive trade practices, and Eighth Claim for Relief for unjust enrichment, and those claims are **DISMISSED with prejudice** as to Lynk, Lyons, Toal-Brothers, and Brothers;

c. The Motion is **GRANTED** as to Plaintiffs' Ninth Claim for Relief for constructive trust, Tenth Claim for Relief for punitive damages, and Eleventh Claim for Relief for an accounting and appointment of a

referee, and those claims are **DISMISSED with prejudice** against the Lynk Defendants;

d. Plaintiffs' First Claim for Relief for declaratory judgment and their claims against Staley are not resolved by this Order and Opinion.

**SO ORDERED**, this the 16th day of June 2026.

/s/ A. Graham Shirley
A. Graham Shirley
Special Superior Court Judge
 for Complex Business Cases